Case number 22-5843 Thomas House et al v. Players Dugout Incorporated et al All arguments not to exceed 15 minutes per side Mr. Michael Patrick Abadie for the appellants Good morning your honors I'm Michael Abadie on behalf of Players Dugout Joe Newton and Joseph Newton I'd like to reserve three minutes of my time for rebuttal Your honors a series of legal errors in the trial court added up to an illogical and unjust result In this case my clients Players Dugout and the Newtons were left holding the bag Owing hundreds of thousands of dollars in lost profit damages under the Trademark Act When the evidence showed that in fact their business went under was not profitable at all Due to defamation by the plaintiffs who were counterclaim defendants below Moreover the evidence showed that Dr. House failed to take any action as he was required to do Under the parties license agreement to go after any suspected pirates The combined effect of all of these legal errors was that Dr. House and the NPA recovered far too much in damages And Players Dugout and the Newtons recovered far too little I'd like to begin if I could with the excessive damages award against my clients The trademark damages in particular $340,000 was excessive and it rested on three independent legal errors The first and most important of these is the attribution question It's clear under this court's case law that it's not all sales that are recoverable under the Trademark Act But merely those attributable to infringement At page 26 of our brief we have a photograph The picture really does tell a thousand or in this case 340,000 words That photograph shows Stevie Delabarre who is the star pupil of Players Dugout holding five baseballs One of the five baseballs shows what we call the squiggle The squiggle is the silhouette of a pitcher That is the logo of the NPA, the plaintiff in this case That was the sole infringement on my client's website And as a result of that picture the jury was allowed to award all sales of the Velocity Plus program against my client So I am a little bit confused and maybe you can help clarify for me exactly how the $340,000 was computed You say it is based on all sales? Correct So then why wasn't it your obligation then to show under the Lanham Act to the jury why that was not the case Why only part of the sales or why costs should be deducted? Yes, Your Honor. I have multiple responses to that. I have two main responses One is that was only presented as evidence of all sales Not as sales attributable to the website which was plaintiff's threshold burden Did you point that out? Yes, we pointed out in our reply brief the attribution argument was made throughout Okay, but did you point it out in the district court? Well, no and that is the second reason I am sorry, let me back up Yes, we argued repeatedly the evidence shouldn't come in because it didn't go to attribution There was objections on the record the morning before Ms. House testified While Ms. House was testifying there were objections And a lot of those objections go to my second point, Judge Moore, which is the improper surprise of all of this So the plaintiffs So one point that you are making is that it shouldn't have been all sales It should have been just attributable to the infringement But if it were correct to use all sales then wouldn't it be your burden to show what your costs were? Yes, Your Honor, that is correct And how do you do that? We do believe there was evidence in the record from which the court could have and should have reduced the amount The profit evidence on the defamation claim from our expert But the defamation claim is different than this claim It is, but that evidence could under the reasoning of the breaking the chain case from the D.C. court we point out There was evidence in the record showing expenses and costs and profit margins But, Your Honor, the reason why the plaintiffs, excuse me, why my clients as defendants weren't able to argue for here all the deductions Is because it truly was during closing argument that plaintiffs counsel for the first time put a number on their alleged lost profit damage During closing argument, and in Kentucky, you know, the defendant closes first, so we had already closed So the very first time that this number was alleged to be all attributable sales was during closing argument There was nothing for us to do Moreover, while we did have an expert and the trial court said in the post-judgment ruling Oh, your expert could have talked about the deductions and expenses We couldn't allow our expert to opine on a new subject matter on which he had never disclosed his opinions In fact, the judge excluded his attempt to update the opinion he had already given with new data I'm wondering about the standard though Under Max Rock, isn't it true that a plaintiff likely must show some connection Between the identified sales and the alleged infringement And some connection is not you have to prove everything, you have to have support for every penny that you want It's simply some connection Why wasn't that satisfied? There was no evidence offered by the plaintiffs to show that everything that came through the website Or all the sales came through the website I'd like to point out a joint appendix 140-141 We have one of the royalty reports And it lists where the sales came from This is a really important factual point here So if you look at that page in the appendix There's maybe 30 lines and they show other programs Other people were selling this product to their customers This was a pitching training program So Players' Dugout had agreements with pitching coaches all over the country And those coaches' students would sign up for this Not through the website, their coach would sell them the Velocity Plus program I think you're answering a question that I'm not asking I'm asking about the standard Isn't it some connection? I don't understand how some connection could require identity of sales and proof Because isn't that the shifting burden that comes back to you to show? If you look at the Frisch's case that this court decided It's not merely some hypothetical connection They have the burden as the plaintiff To show that these sales are attributable in some way They never tried to put in any evidence Never saying that all sales came through the website They couldn't have And again, Your Honor, this comes back to the unfair surprise point We were left guessing We were left guessing until closing argument what they were going to argue Were you left guessing because of the way the information got to your opposing counsel? If you don't give the preliminary documents from which damages can be calculated Then how is it unfair surprise that they testify without further advance notice? Your Honor, that is not how the facts play out in the trial court And if I may just correct a few points in the briefing that I think are contested First is the initial disclosures just said We're pursuing damages for trademark damages Under Bessemer and this court's case law You can't just say here's my category Here's my number and here's the supporting documentation We then served an interrogatory Say give us your damages calculation It came back and said we're pursuing this category of damages No number, never a number Three years elapsed between Help me understand What was the relationship between that And the request for specific documents That you were to provide in order for them to calculate a number So discovery closes And three years elapsed And not once did they come forward and say We don't have the evidence we need to supplement under Rule 26 Or to supplement our interrogatory About four months before trial They send a letter saying hey we need more royalty reports We produce them immediately There's no dispute they had them for at least two to three months before trial And never supplemented Never supplemented the Rule 26 disclosure to put a number on it Never offered any kind of expert testimony The first time we ever saw any number of any sort Was the night before Marie House testified Day six of trial And I want to encourage the court to go look at this It's page 3517 of the record And in that They ask us to stipulate to a total sales number And I'm just going to read a sentence that I think is crucial From the end of the email We ask you stipulate only That these are PDI's gross revenues from sales of the Velocity Plus arm care program We are of course not asking you to stipulate anything further Such as whether the sales are attributable to the infringement Et cetera So even in this supposed disclosure on day six of trial Which is nowhere near sufficient to meet Rule 26 And under Rule 37 should have led to exclusion Even that email says We acknowledge there's a difference between What your total sales of Velocity Plus were And which ones were attributable to the squiggle on the website So it truly was the closing argument After we had rested our case After we had closed and made all of our arguments to the jury Before in counsel's argument for the first time said You should award 100% of all Velocity Plus sales As lost profit damages Could you explain what your theory is As to how to measure The proper award Is it lost profits of PDI Is it lost profits of House and his side Or does it involve royalties Well we think the royalties amount Is really the best measure of it here Because it's very difficult to determine What that measure would be And I will note When you say the royalties So the royalties that are actually paid Or hypothetical royalties What would be The parties negotiated for the value of Marketing this in conjunction with NPA and Tom House There was a negotiated royalty amount for each program sold And I will note Plaintiffs recovered that amount In addition to these lost profit damages They recovered $40,000 Of unpaid royalties In addition to $340,000 in lost profits Is that allowed under the Lanham Act There are cases saying You can recover lost profits In addition to royalties I'm not arguing as a matter of law That's always prohibited However In this case where the statute says You know this is 15 U.S.C. 1117 The award shall constitute compensation And not a penalty That it is plainly a penalty To say in addition to the negotiated royalties Which we're allowing you to recover We're giving you another $340,000 In lost profits During a time when the Newtons lost money They didn't make profits on these Their business went under I'm confused then The Lanham Act says Under 1117A Entitled subject to principles of equity To recover defendant's profits Any damages sustained by the plaintiff And the cost of the action So it would sound with the word and That you get both That the plaintiff would get both the profits And damages sustained I'm sorry your honor We're not arguing that You couldn't recover profits That we gained from infringement If the jury found it You know plus any losses Now the jury said that The actual damages of trademark infringement Was $1 The jury awarded contract damages Which are the royalties That hadn't been paid During this period of dispute Of $40,386.20 So House recovered His actual damages for trademark His royalties under the contract And an additional $340,000 Which is supposed to Under the statute you read Constitute our profits During the period of infringement This is a period where the record showed Their defamation caused our business to go under I see I'm already at my 12 minutes And I didn't get a chance to Address the other arguments I'm happy to do that on rebuttal Unless Well you can rebut whatever they say But you can't introduce new arguments On rebuttal Okay well if the court did have questions About the other arguments in our brief We'd present it around the punitive damages Or around the breach of contract claim I'd be happy to answer those At the court's discretion We'll give you your rebuttal time Thank you Good morning your honors My name is Michael Valenti And I'm here with my colleague Hayden Holbrook And we represent the plaintiffs In the action Dr. Tom House And National Pitching Association Inc. I would note Dr. House is in the far right corner And is present in the courtroom Your honor It was stated in the appellant's brief And Mr. Abadi reiterated the statement here That essentially a miscarriage of justice occurred here Because there were multiple errors by the district court And the evidence unequivocally showed That Players Dugout went under As a result of false and defamatory statements By Tom House and Players Dugout He also alluded to the fact that Dr. House and Players Dugout Breached the contract with Players Dugout And drove it out of business by their tortious conduct That is a construct That is a fiction Your honor And that undermines their entire case That is not what happened here The evidence after an 8 day jury trial Showed that that's not what happened That's not what the jury at all Found in the instructions And there's simply no reason to Jettison the substantial Deference given to the jury's verdict here And that's what Mr. Abadi is asking this court to do Getting back to the questions that I was raising earlier What is your theory as to how the $340,000 Was arrived at Okay Your honor And there was some conflating going on First of all Here's the way And let me begin by saying It's not true Absolutely not true That the first time That they learned of our damage calculation Was during my closing argument That is absolutely not true And the record supports that Marie House Who was an employee of National Pitching Association Testified as to the calculation of the damages And But can you tell me now How What's the basic theory as to how You get the $340,000 Okay Yes, your honor So There When Mr. Abadi refers to royalties Royalties were what were Payable under the license agreement And There was a long period of time Before the license agreement Was terminated Where So in effect the license agreement was Enforced But Players dugout was not paying the royalties But my understanding and tell me Where I'm wrong Is that that's approximately 40,000 And that that's a separate matter from the 340,000 Am I No, you're right But I think Mr. Abadi was Trying to conflate That number with the $340,000 number I just wanted to point that out, your honor Okay, so the royalties are separate Okay So There were two periods to use And we had It's undisputed We had incomplete information That was in the possession Of Players dugout We asked for it We asked repeatedly for the monthly Royalty reports Even as of the day of trial We never received them But the way that the $340,000 number was arrived at Your honor was There were two relevant periods of time One Was When NPA And remember there was no contract With NPA That's another thing here No contract between players dugout and NPA The contract was between Dr. House And NPA But While the contract was in force NPA Allowed The use Of Its marks So That In October Precisely October 13, 2015 That's when NPA Wrote to Players dugout And said We are Terminating our association with you And by the way that wasn't published to anyone It was just written to players dugout And so as of that point That was the point of As of October 13, 2015 When Players dugout no longer had the right Undisputed no longer had the right at that point to use Any of NPA's Marks Logos Materials Anything like that So As Ms. House testified That number Would The The damage Period for Lost Profits which is With our burden to prove sales only Ran From October of 2015 Through The incomplete Period When we were provided Monthly Royalty reports So I'm sorry But you would agree Wouldn't you that What PDI did With Dr. House Before The infringing period Doesn't Constitute a sale Or Calculation of damages during The infringing period No your honor it did with respect to National Using national Pitching associations Marks for the reasons I just explained Because as of October of 2015 National Pitching Association said You are to no longer use Any of our marks any of our materials And then that that is the deadline That begins the infringing period Correct All of your damages must be within The infringing period Correct Correct your honor Yeah Yes your honor Yeah So I know that My problem is I know there are arguments About time periods Before infringement But I want to make sure we're In agreement That the damages begin On 10, 13, 15 Because that is an infringing period Yes your honor Okay then go ahead Get back to your Because I still don't understand the answer to the question That I thought should be relatively straightforward How do you measure The 340,000 How do you get that number What are the concepts behind that Okay So What you do Is Like I said Judge you measure Their sales Players dug out sales Sales of everything that they sell No It was very tough We just used The this program This actual program I must confess to being lost At most of what you've said It seems to me That an answer to the question That I understand Judge Moore to be asking Would be to tell us Your theory of how the jury Got to the 340,000 figure Am I missing the boat You have got the boat And I was Yeah and I mean that ought to be Well the jury took this figure It came from here in the record It took that figure It came from here in the record It's that kind of answer I think we're looking for Yes Judge Gibbons And so The jury Based on Ms. House's testimony Took their sales Just of the program Very targeted Just of the program For that period of time From October Through I think it was July of 2017 But that's That didn't even end The infringing period It went on after that We had incomplete Information And just doing simple The jury could have come back With a larger figure Or That it was using Unspecified figures Beyond a particular date No we did not Your Honor We did not use Unspecified We didn't have that information So we had to truncate it And limit it to The period that they gave us The information for So they told you What their sales were From October 2015 Until July 2017 It's a little Essentially Yes Your Honor The qualification I'm making is The royalty reports You have to sort of Back into the number They show What they Received In They show What Amounts When you say royalty reports Were you getting royalties During that period No no That stopped in August of Why do we bring up royalty reports Because they They had supplied Reports For An aggregated report Through July 7th Or July 5th 2017 So But it's essentially It's essentially Your Honor To answer your question Yes it's It's Doing math From the limited information They gave us Which by the way Was not contested As to the number So here My understanding of what your opponent is arguing Is that somehow It shouldn't be the sales Of the program But it should be the Sales of the infringing Product Is that Well they're making A sensible distinction Your Honor I think they're making this At Attributability argument But let me just say You know first and foremost It's our contention that that argument Is not properly before that court It was not Preserved At trial They argued two things They argued We didn't comply with Rule 26 So that no Evidence of Profit should come in at all And then Their secondary Argument Was that It was for a new trial Under Rule 59 That the Award of the profits Exceeded the weight of the evidence Because the jury Did not Take into account The Their costs and expenses From the tax returns Those were their arguments Your Honor Then They turned around And for the first time on appeal Raised This Legal Sufficiency issue Of the evidence Under Rule 50 And said well there should have been a judgment As a matter of law Because the evidence was simply Legally Insufficient to support the verdict Rule 50A2 Says the motion Must specify the judgment sought And the law And facts That entitle the movement to judgment There's not one Thing in the record Where they presented the court Any law On this attributability argument Whether it was During Jury instructions During the trial In post trial motions They never It's waived Your Honor And as we point out In our brief In the Braun v. Ultimate Jet Charters case Motions for a new trial should not be used As a loophole for presenting Sufficiency arguments That were not properly preserved By a pre-verdict motion For a A judgment as a matter of law Is the law Such that You should be able to recover only for the lost Profits that are attributable To the infringement Yes Your Honor And yes I agree with that And the jury was properly instructed The instruction said You can only award damages For those profits That are specifically attributable To the unauthorized use of plaintiff's mark And let me note One of you And I'm sorry I don't remember You brought up the Max Rack case This is an important point Your Honor Because in the Max Rack case That actually supports our position The sale of any Product Bearing the infringing mark Would have a sufficient connection Between the infringement and the sale I think Judge Stranch That was your point That's I mean there was clearly Enough evidence for a jury To find That the sales Of this targeted program Were attributable To the infringement We did not As they contend Narrowly plead In our  In our amended complaint That The Infringing activity only arose From The website Your Honor Part of promoting this program They were Including ball kits That had the NPA logo On it Yes Constituting infringement And we pointed that out That was an aspect of the infringement If I could switch the attention Just briefly to the question Of the punitive damages Against PDI of 67,000 The instruction Appears to be The jury instruction appears to be Incorrect under Kentucky law Should we not Vacate and remand For redetermination of that No Your Honor I Respectfully know It's not I believe The standard There is It must be obvious And prejudicial And you have to take a look At the instructions as a whole But I thought the instructions That the district court used Was that this burden of proof Was preponderance of the evidence And instead the burden of proof Is clear and convincing Evidence and The jury awarded under this lower standard The 67,000 Well But Again we proposed the correct Instruction Your Honor You proposed clear and convincing Yes they proposed the wrong instruction They never objected To the instruction And I think if you just look at it It wasn't It just wasn't obvious It obviously wasn't obvious to them Because they never You proposed the clear and convincing evidence Yes we did Your Honor Thank you Any further questions Thank you Thank you Your Honor You could address that last point Yes I will I'd just like to clear up some confusion So you are correct under Kentucky law The Eifler case which is one I litigated Says that putting the wrong standard Is reversible error There are lots of Kentucky cases Harden and others saying If there's an elevated standard of proof It must be put in the jury instruction And otherwise it's reversible error On the question of suppose it invited error I think there's some confusion here It is true that we proposed An instruction that had preponderance To be used against them The judge corrected that When writing the jury instructions And the instruction against them at trial said Clear and convincing They proposed an instruction against us That said clear and convincing The one the judge actually used Got switched to preponderance of the evidence Okay but And you objected No we did not object in real time Your Honor This happened the morning of the jury instructions It was chaotic I fully admit but in the Eifler case Which I mentioned I was counsel in that case There was no objection there either And the court nonetheless said Reversal was required because it was plain error And it's as a matter of law prejudicial Under Kentucky law to have the wrong standard Does that have to do with the amount Of the punitive damages Or the concept of even being allowed To reward them The latter we also think there are Constitutional problems with the amount The 67,000 to one ratio That's an aggregation question right It's partly an aggregation question It's a due process question And I will just briefly note on aggregation There's not a single case that either the judge Cited in the JNOV or that the Plaintiffs have cited where the aggregation Question is can we aggregate a claim That does not allow punitive damages Like the Lanham Act with a claim that does Like the one dollar for unfair competition And consider that the baseline For the multiple All those cases that they cite are Two claims that each had punitive damages And can we add the underlying compensatories And the underlying punitives to consider the ratio There's no case I'm aware of that says You may take compensatory damages On a claim that doesn't allow punitives And use that as the number For the numerator Was there some suggestion that the jury May in fact have chosen to do it That way What is wrong with the jury Saying I'm giving These damages here And now I'm going To look at these state law claims And I'm going to look at the entire Case and award both Congress hasn't allowed damages For the trademark infringement The jury's verdict says one dollar for the claim On which punitives were allowed If I may briefly in the time We did not waive The attribution point if you look at Pages three to five in our brief we know It was in the direct verdict motion It was in defendants closing It was in the jury instruction arguments It was in the J&OV motion and the J&OV reply That's all laid out It's more than enough to preserve it And Judge Moore if I can answer your question That you started with Where's the 340,000 come from I think there's only one place that it can come from And this is page 27 of our brief And this is Marie House Testifying over our objection To any of this evidence Where she was asked What was the number you calculated as The gross revenues And she said it was 337,190 or something like that Something in that area 195 maybe That was the sum total of the evidence On which the 340,000 was awarded And it was Judge Stranch And Judge Moore to your question It was the period between when NPA sent a letter to my client saying Please take the squiggle off your website Up until September of 2017 And this went to the point about Continuing infringement R31 in the record September 7, 2017 there was an agreed order Filed Which made clear that the website Had been modified So this notion that there was some Continuing gap between July of 2017 and some unspecified Future date is not true Here's what I'm struggling with If the plaintiff Put in the evidence In accordance with the Royalty reports that were received On the eve of trial Or very near there too Didn't the burden shift to you To come back and to show No, that's not The profits because I have these deductions or these Costs Why would they have to have Allocated your costs out of Their proof of damages Wasn't that your job? Two part answer to that First, that evidence never should have Come in, that's one of our arguments Under Rule 26 and Rule 37 This court said in Bessemer Exclusion of this undisclosed damages amount Is quote mandatory Unless there's a reasonable explanation Then we're getting into the five Provisions, the weighing and the Balancing, let's just assume that They could put it in that way If they did, whose job is it To show the deductions and Costs in order to Titrate down The amount of damages that would be Considered available by the jury I understand the burden shifting framework Under the Lanham Act, Your Honor, and we Believe that there was plenty of evidence From the profit margin testimony From our expert who testified admittedly Your Honor, on defamation From which the judge sitting in equity Exercising her duties Under the Lanham Act should have Reduced it like the Max Rack case But this all comes back to the surprise point, Your Honor Not only the surprise that they didn't Disclose it, they never put a number on it Prior to day, you know At best, day six of trial But in reality, if you read the closing Argument and the Vehement objections to the Argument that we should get all $340,000, it is Abundantly clear that was surprise To the defense counsel It is abundantly clear Thank you both for your argument The case will be submitted